| | |
|---|---|
| WEISBERG LAW<br>Matthew B. Weisberg, Attorney ID No.: 85570<br>7 South Morton Ave.<br>Morton, PA<br>610-690-0801<br>Fax: 610-690-0880<br>**Attorney for Plaintiffs** | HOPKINS & SCHAFKOPF, LLC<br>Gary Schafkopf, Attorney ID No. 83362<br>11 Bala Ave<br>Bala Cynwyd, PA 19004<br>610-664-5200 Ext 104<br>Fax: 888-238-1334<br>**Attorney for Plaintiffs** |

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELBERT ANTHONY GIDDINGS<br>5826 N. 16th Street<br>Philadelphia, PA 19141<br><br>and<br><br>EUNICE ISAAC<br>5826 N. 16th Street<br>Philadelphia, PA 19141<br><br>and<br><br>PULLEN A. OSAGIE<br>2933 Beach Channel<br>Far-Rockaway, NY 11691<br><br>Plaintiffs<br>v.<br><br>BROWN & BROWN GENERAL<br>CONTRACTORS, INC.<br>3 Mock Drive<br>Wilmington, DE 19810<br><br>and<br><br>JOEL BROWN, SR.<br>3 Mock Drive<br>Wilmington, DE 19810<br><br>and<br><br>John Does<br>Defendants. | CIVIL ACTION<br><br><br><br>No.<br><br><br><br>**JURY TRIAL DEMANDED** |

**PARTIES**

1. Plaintiff, Elbert Giddings, is an adult individual residing at the address captioned above.

2. Plaintiff, Eunice Issac, is an adult in an adult individual residing at the address captioned above.

3. Plaintiff, Pullen A. Osagie, is an adult individual residing at the address captioned above.

4. Brown & Brown General Contractors, Inc. is a Delaware corporation with its principal place of business address at captioned above.

5. Defendant Joel Brown is an adult individual residing at the address captioned above.

## JURISTICTION AND VENUE

6. Venue is proper in the United States District Court for the Eastern District of Pennsylvania, because this is where the transactions and occurrences that give rise to the cause of action have taken place.

7. Jurisdiction of this Honorable Court is based on diversity of citizenship. 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

8. Plaintiffs are Philadelphia residents who wanted to renovate their home.

9. Plaintiffs contacted Defendants for the renovation job in early Spring 2016.

10. Defendant, Brown & Brown is a general contracting company and Defendant, Joel Brown, is a pastor at a Baptist Church in Philadelphia.

11. Plaintiffs are part of the church community and Plaintiff, Giddings, plays for the church band.

12. Given Defendant, Brown's status as a pastor Plaintiffs trusted Brown to renovate their homes.

## Elbert Giddings and Eunice Issac v. Brown and Brown General Contracts, Joel Brown Sr. and John Does

13. On or about January 24, 2016, a pipe in Plaintiff, Giddings, bedroom burst damaging the upstairs bedroom, the dining room, the kitchen and damaged several of Plaintiff's musical instruments.

14. Plaintiffs filed a homeowners claim with their insurance, Universal Property and Casualty Insurance Company.

15. Plaintiffs having previously used Defendants services and given their personal relationship hired Defendants to repair the damage.

16. Prior to beginning any work on the property Defendants were ready to begin the requested an initial payment from Plaintiffs of $10,000.

17. Plaintiffs made subsequent payments of $10,000.00 and $7,000.00 to Defendants.

18. The first initial payment was made by one of Plaintiff's insurance company. Exhibit A

19. Defendants started to work on the home by demolishing the areas that needed to be renovated.

20. Defendant moved several of Plaintiffs musical instruments into smaller room in the home and damaged several of the instruments in the process.

21. Defendants began to work on the plumbing system in the house but never completed the work.

22. Defendants failed to place the radiator back in its place.

23. Due to Defendants failure to complete the plumbing work, there is constant flooding in the house.

24. The floors, carpet, and appliances around the house have been damaged.

25. After demolishing the Plaintiffs home and not completing the plumbing work he began Defendant never returned to Plaintiffs home.

26. Plaintiffs tried to contact Defendant time and time again.

27. Between March 2016 and May 2016, Plaintiff sent Defendant text messages and attempted voicemails to ask what times Defendant would be coming over to complete the renovation. Exhibit B

28. Defendant, at first, responded with certain times, but never showed up.

29. Eventually, Defendant stopped answering entirely.

30. Plaintiffs, were forced hire another contractor to complete the work Defendants refused to finish.

31. Plaintiffs filed a complaint with the Commonwealth of Pennsylvania Office of Attorney General against Defendant on May 23, 2016. Exhibit C.

32. Despite efforts to make the home habitable there continue to be persistent damage caused by Defendants including but not limited to leaking pipes and flooding.

33. Plaintiffs have not been able to replace the damaged appliances and are not able to replace the items stolen by Defendants.

### Pullen Osagie v. Brown and Brown General Contracts, Joel Brown Sr. and John Does

34. Plaintiff is a New York resident who has property in Philadelphia, Pennsylvania.

35. Plaintiff hired Defendants to renovate in his property that had been damaged by Plaintiffs previous tenants.

36. Plaintiff was introduced to Defendants by Plaintiff, Gidding's, and meet Pastor Brown after attending church services with Mr. Giddings.

37. On or about July 22, 2015 Plaintiff entered into a contract with Defendant Brown.

38. Plaintiff Osagie wired $1,800.00 to Defendant to begin the work. Plaintiff, Giddings provided $1,000.00 cashier's check to Defendant to continue the work and Plaintiff Osagie paid 3,535.00 in cash before Plaintiff abandoned the job. Exhibit D.

39. Defendants began demolishing parts of Plaintiff's property in which he wished to have renovated.

40. Plaintiff is in New York for most of the year, so he believed that the renovations were being done while he was out of state.

41. When Plaintiff came to his Philadelphia property, the only work that was done was the demolition.

42. Plaintiff's property was never renovated and continues to remain in a state of disrepair.

43. The floors were destroyed, there was flooding to his home because of the destruction of plumbing, and his furniture was destroyed.

44. The home has been uninhabitable since Defendant demolished it and Plaintiff has been unable to rent the home to tenants.

## COUNT I – VIOLATIONS OF UTCPL

45. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

46. At all times material, Defendants' are a "person(s)" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. §201-1, et seq. ("UTPCPL").

47. The Defendants' aforementioned conduct constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL.

37. On or about July 22, 2015 Plaintiff entered into a contract with Defendant Brown.

38. Plaintiff Giddings provided Plaintiff funds for a down payment of $1,800 for Defendants' services and then paid an additional $6335.00 in cash. Exhibit D.

39. Defendants began demolishing parts of Plaintiff's property in which he wished to have renovated.

40. Plaintiff is in New York for most of the year, so he believed that the renovations were being done while he was out of state.

41. When Plaintiff came to his Philadelphia property, the only work that was done was the demolition.

42. Plaintiff's property was never renovated and continues to remain in a state of disrepair.

43. The floors were destroyed, there was flooding to his home because of the destruction of plumbing, and his furniture was destroyed.

44. The home has been uninhabitable since Defendant demolished it and Plaintiff has been unable to rent the home to tenants.

## COUNT I – VIOLATIONS OF UTCPL

45. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

46. At all times material, Defendants' are a "person(s)" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. §201-1, et seq. ("UTPCPL").

47. The Defendants' aforementioned conduct constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL.

48. The UTPCPL authorizes the Court in its discretion to award up to three (3) times ("treble") the actual damages sustained for violations as well as attorneys' fees, for which Plaintiff is entitled.

## COUNT II- HOME IMPROVEMENT CONSUMER PROTECTION ACT (HICPA)

49. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

50. Section 517.9 of HICPA prohibits certain acts and practices by home improvement contractors, including:

    b. Abandoning or failing to perform, without justification, any home improvement contract or project engaged in or undertaken by the contractor, 73 P.S. § 517.9(5);

    c. Demanding or receiving payment for a home improvement before the home improvement contract is signed, 73 P.S. § 517.9(9); and

    d. Accepting a deposit in excess of one-third of the contract price when the total contract price is greater than $5,000.00, 73 P.S. § 517.9(10) (i)(A) 73 P.S. §§ 517.9(2), (5), (9) and (10) (i)(A).

51. Defendants violated Section 517.9(5) by abandoning and, without justification, failing to perform or to complete home improvement contracts they had undertaken. 73 P.S. § 517.9(5).

52. Defendants violated Section 517.9(9) by receiving payment from Consumer 2 for a home improvement before a home improvement contract is signed. 73 P.S. § 517.9(9).

53. Defendants violated Section 517.9(10)(i) by receiving a deposit in excess of one- third when the total home improvement contract price was over Five Thousand and 00/100 Dollars ($5,000.00). 73 P.S. §517.9(10) (i).

54. Section 517.10 of HICPA deems a violation of any of its provisions to be a violation of the Consumer Protection Law. 73 P.S. § 517.10.

55. The aforesaid methods, acts or practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by Section 201-3 of the Consumer Protection Law, as defined by Section 201-2(4), including, but not limited to, the following:

    a. Section 201-2(4)(v), representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have; and

    b. Section 201-2(4)(xxi), engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. §§ 201-3, 201-2(4)(v) and (xxi).

56. Section 517.7 of HICPA requires home improvement contractors to utilize contracts that satisfy various requirements, including:

    a. Containing the entire agreement between the owner and the contractor, including attached copies of all required notices, 73 P.S. § 517.7(a)(3) and (c); and

    b. The approximate starting date and completion date, 73 P.S. §517.7(a)(6).

46. Section 201-7 of the Consumer Protection Law requires certain notices of a right of cancellation to be included with consumer contracts that are over twenty-five dollars ($25) and that are entered into in connection with contact made at a consumer's residence. 73 P.S. §201-7.

47. Specifically, the consumer must receive a fully complete Notice of Cancellation form, in duplicate, which must be attached to the contract on a separate sheet and must encompass the exact language in ten-point bold face type as contained in Section 201-7(b)(2).

48. Defendant violated Section 517.7(a)(3) and (c) by failing to include a required attached Notice of Cancellation for all consumers.

49. Defendants violated Section 517.7(a)(6) by using contracts that did not contain starting and completion dates for the consumer.

50. Defendants violated Section 201-7(b) by failing to include the separate Notice of Cancellation for all consumers,

51. Section 517.10 of HICPA deems a violation of any of its provisions to be a violation of the Consumer Protection Law. 73 P.S. §517.10.

52. The aforesaid methods, acts or practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by Section 201-3 of · the Consumer Protection Law, as defined by Section 201-2(4), including, but not limited to, the following:

    a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have, 73 P.S. § 201-2(4)(v); and

    b. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, 73 P.S. §201-2(4)(xxi). 73 P.S. § §201-3, and 201-2(4)(v) and (xxi).

53. Section 517.8(2) of HICPA states that a person commits home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor receives any advance payment for performing home improvement services and fails to perform or provide such services. 73 P.S. § 517.8(2).

54. Defendants violated Section 517.8(2) by receiving a deposit from the Consumer and continuing to request and receive substantial sums of money when only minor work on the project was actually performed and then abandoned altogether.

55. Section 517.10 of HICPA deems a violation of any of its provisions to be a violation of the Consumer Protection Law. 73 P.S. §517.10.

56. The aforesaid methods, acts or practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by Section 201-3 of the Consumer Protection Law, as defined by Section 201-2(4), including, but not limited to, Section 201-2(4)(xxi), which prohibits engaging in any other: fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. §§ 201-3, 201-2(4)(xxi).

**WHEREFORE,** Plaintiff demands judgment in their favor and against Defendants, their agents, servants, workmen and/or employees, individually, jointly and/or severally, for an amount in excess of $75,000.00, plus interest, costs of suit, attorney's fees, treble damages, and punitive damages, plus other relief which this Honorable Court deems necessary and just.

Respectfully Submitted,

HOPKINS & SCHHAFKOPF, LLC                WEISBERG LAW

BY: <u>Matthew B. Weisberg</u>                BY: _____
MATTHEW WEISBERG, ESQ.              GARY SCHAFKOPF, ESQ.

DATED: 8-10-16                              DATED: 8-10-16