IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELBERT ANTHONY GIDDINGS, et al. | : | CIVIL ACTION |
| v. | : | No. 16-4917 |
| BROWN & BROWN GENERAL CONTRACTORS, INC., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                            **March 23, 2020**

This case arises from two home improvement projects gone wrong. Plaintiffs Elbert Anthony Giddings, Eunice Isaac, and Pullen A. Osagie sued Defendants Joel Brown and Brown & Brown General Contractors, Inc. (collectively, Brown) alleging violations of two Pennsylvania consumer protection statutes after Brown agreed to complete the projects, took Plaintiffs' money, and abandoned the projects. After Plaintiffs filed and served their Complaint, Brown failed to appear. The Clerk of Court entered Brown's default and Plaintiffs now move for default judgment pursuant to Federal Rule of Civil Procedure 55. At the hearing to assess damages for default judgment, Brown appeared and was represented by counsel. Upon hearing testimony and reviewing both parties' evidence as to damages, the Court will grant Plaintiffs' motion, enter judgment in Plaintiffs' favor, and award Plaintiffs damages in the amount of $48,405.

**BACKGROUND**

Giddings and his mother Isaac own a home at 5826 N. 16th Street in Philadelphia. In January 2016, a pipe in one of the bedrooms burst and damaged the property. Giddings then filed an insurance claim to cover the costs to repair the damage. Giddings hired Brown to repair the damage. Giddings had previously used Brown for other projects and had a personal relationship with him. Unknown to Giddings, Brown was not a Pennsylvania licensed contractor.

Giddings permitted his insurance company to make his insurance payment directly to Brown. Thereafter, the insurance company sent a check to Brown for $10,000. Giddings also provided Brown with a second check for $7,000. Brown cashed these checks.

Brown did not provide Giddings with an invoice for the work that amounted to $17,000. He did provide Giddings with a letter in which they agreed an invoice would be sent to Giddings's insurer. The invoice to the insurer stated Brown would remove the contents and dry the house for a total of $13,500.

Although Giddings paid Brown $17,000, Giddings testified Brown completed no work on his property. Brown, on the other hand, testified he completed all work that he was paid to complete. Specifically, he testified as to the work he completed including boxing and removing all furniture and belongings in the house. He testified he dried the floors from the water damage and removed all damaged rugs. After clearing the contents and drying, Brown testified that he ran nearly 52 feet of copper pipes, removed old insulation, and replaced a radiator. He also testified and provided a photo of a hole in the floor that he repaired by covering with a wooden plank.

Despite the work Brown contends he completed, he admitted he did not complete the all of the work he was hired to complete. He stated he stopped working because he was not paid enough to complete the rest of the job. Once he stopped working, Brown testified there was $3,000 remaining from the money Giddings paid him. This money was never returned to Giddings.

Osagie owns a rental property at 2115 Simon Street in Philadelphia. In 2015, Osagie hired Brown to renovate his property after it was damaged by previous tenants. He hired Brown based on Giddings's referral and recommendation. Unknown to Osagie, Brown was not a Pennsylvania licensed contractor and was uninsured.

Brown was hired to complete several projects including installing new doors, windows, cabinets, and flooring. Brown estimated the cost of labor and materials for these projects was $11,500 and provided Osagie with an invoice for the work and materials. *See* Pls.' Ex. D. Osagie testified that he paid Brown $9,135. Brown conceded Osagie paid him this amount. Although Osagie paid Brown, Osagie testified Brown completed no work.

Brown testified he completed at least three of the tasks on the invoice and had pictures to prove his completed work. Nevertheless, Brown did not provide any photos showing the work was completed. Brown also testified that after he completed certain work, there was a break in at Osagie's property and the work was destroyed. To the extent he purchased materials, Brown testified all materials were stolen from the property.[1] Again, there is no evidence this occurred. Finally, although the invoice provided Brown would purchase new cabinets and install them, Brown testified he never purchased cabinets. The cost for the cabinets was $4,600.

After the renovation was incomplete, Osagie hired someone else to complete the work. Osagie spent $11,194.04 to complete the renovation. This cost included the exact same work and materials Osagie hired Brown to complete and purchase.

Plaintiffs brought this action in September 2016. They allege Brown violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) and Home Improvement Consumer Protection Act (HICPA). *See generally* 73 Pa. Cons. Stat. §§ 201-9.2, 517.10. After personally serving Brown twice, Brown failed to appear. Nonetheless, after Plaintiffs discovered Brown was in bankruptcy, Plaintiffs recommended the case be resolved

---

[1] Brown testified four windows, sheet rock, dry wall, mud, and insulation were stolen from Osagie's property the day after he purchased them.

in the bankruptcy case. The Court placed the case in suspense while Brown's bankruptcy case was pending.

On July 12, 2017, Plaintiffs filed a request to enter Brown's default, which the Clerk of Court entered. Plaintiffs then filed the instant motion for default judgment. Brown applied for bankruptcy again in September 2017, and Plaintiffs offered to resolve the case in the bankruptcy case. The Court placed the case in suspense while the second bankruptcy case was pending.

On September 30, 2019, Plaintiffs informed the Court that Brown's bankruptcy case was terminated. Because the issues in this case had not yet been resolved, Plaintiffs asked to proceed with the motion for default judgment. The Court then scheduled the hearing and Plaintiffs served Brown with their motion and the Court's orders.

On January 7, 2020, the Court held a hearing on the motion for default judgment. At that hearing, Brown appeared for the first time. He was also represented by counsel (whom he hired only an hour before the hearing). Brown requested a continuance of the hearing, which the Court denied. The Court nevertheless agreed to hold a second hearing on January 22, 2020, in which Brown could provide his defense as to the amount of damages. At the first hearing, Giddings and Osagie testified. They also presented evidence establishing the amount of money they each paid Brown.

At the second hearing, Brown and one of his workers testified. According to their testimony, they completed the required work. Although, some of their testimony established that not all the work was completed. Brown also submitted photos of the properties, however, they largely showed the properties before any work was completed. Brown did not provide any other evidence that the work was completed.

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 55, after the clerk has entered a defendant's default, a plaintiff must apply to the Court for entry of a default judgment. Courts must use "sound judicial discretion" in determining whether to enter a default judgment. *See E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009). Before entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

The entry of default judgment is appropriate in this case. Plaintiffs will be prejudiced if the default judgment is not granted because they will be left without recourse for unknowingly entering into invalid construction contracts with an unlicensed contractor. Plaintiffs have established Brown violated the UTPCPL and the HICPA in several ways. Pursuant to § 201-9.2 of the UTPCPL, and § 517.10 of the HICPA, they can now seek recourse for those violations.

Second, Brown does not appear to have a litigable defense (other than offsetting damages). At the hearing, he admitted he is not a licensed Pennsylvania contractor, which alone is a HICPA violation. *See* 73 Pa. Cons. Stat. § 517.3. The evidence provided by both parties also establishes several other HICPA violations due to missing elements in the contracts, the excessive deposits Brown accepted for the proposed work, and Brown's failure to carry insurance for his contracts. *See id.* § 517.7(a)(1)–(11).

Finally, Brown's default in this case is due to his own conduct. There are letters from years past discussing Brown's efforts to evade service of documents in this case. *See, e.g.*, Pls.' Letter, Oct. 26, 2017, ECF No. 21. Also, at the hearing, Brown admitted to receiving notice of the underlying action and the hearing over a week before the hearing. He nonetheless chose to retain

5

counsel only an hour before the hearing. These continued actions in delaying these proceedings and Plaintiffs' recourse are sufficient for the Court to enter default judgment in this case. *See E. Elec. Corp. of N.J.*, 652 F. Supp. 2d at 607 (entering default judgment when all three factors weighed in favor of doing so and no alternative sanction would be appropriate). The Court will therefore enter default judgment in Plaintiffs' favor.

The Court will also award damages totaling $48,405. Once a default judgment has been entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). A party who defaults does not admit the amount of damages the plaintiff seeks. *See id.* To determine the amount of damages, a court may make its determination by conducting a hearing or by receiving detailed affidavits from the plaintiff. *See* Fed. R. Civ. P. 55(b)(2)(B)–(C). In this case, the Court held a hearing over two days at which both parties presented testimony and evidence. The Court will consider all evidence in determining the appropriate amount of damages in this case.

Plaintiffs are entitled to actual damages or statutory damages of $100, whichever is greater, for Brown's liability under the UTPCPL and HICPA. *See* 73 Pa. Cons. Stat. § 201-9.2 (private action for actual or statutory damages permitted for violations of UTPCPL); *id.* § 517.10 (any violation of HICPA is a violation of UTPCPL). The Court may also award, in its discretion, treble damages. *See id.* § 201-9.2. Finally, the Court may award costs and reasonable attorney fees. *See id.*

In this case, Giddings and Isaac seek $17,000 in actual damages. Osagie seeks $9,135 in actual damages. Plaintiffs also seek treble damages and attorney fees. Brown challenges the damages because he contends he completed the relevant work for the money he was paid.

6

The Court will award Giddings and Isaac $7,000 in actual damages. Brown admitted he accepted $17,000 from Giddings to complete certain renovation work. Neither Brown nor Giddings, however, produced an invoice itemizing the work to be done and relative cost of each task or materials amounting to $17,000.[2] Making the determination of damages even more difficult, Giddings testified Brown completed no work on his house, whereas Brown testified he completed all $17,000 worth of work.

The Court concludes Brown did not complete $17,000 worth of work on Giddings's home. Brown's testimony stated he removed contents from Giddings's home, set up fans to dry the water damage, repaired a hole in the floor, ran 52 feet of copper pipe, and replaced a radiator. Brown testified he stopped working on the project after Giddings requested certain other work to be completed such as wanting tile rather than carpet flooring. Further, Brown testified after he stopped working, $3,000 remained of the $17,000 Giddings paid him. According to Brown, the $3,000 did not cover Giddings's new request for tile rather than carpet. Nevertheless, Brown did not provide any evidence establishing the remaining $3,000 was returned to Giddings. As a result, Brown is liable for the $3,000 Giddings paid and was never returned.

As for the remaining work, the Court is not convinced by Brown's testimony that his work of removing contents and drying water damage was worth $13,500 as described in the invoice to Giddings's insurer. Throughout his testimony, Brown never stated how much certain materials cost, how much his and his workers' labor cost, or what the total cost of the entire project was intended to cost. His testimony in which he appeared certain that his work was worth exactly what Giddings paid, is thus not supported by any calculation or extrinsic evidence. Even considering

---

[2] Although Brown produced an invoice for $13,500 to cover the removal of furniture and carpets and drying of the floors, this invoice was sent to the insurance company and did not bear Giddings's signature. *See* Defs.' Ex. 2, at 3.

7

the invoice Brown sent to Giddings's insurer, in which he estimated $13,500 for content and carpet removal, fans, and dehumidifiers, the Court finds the work quoted to be overvalued. By Brown's own testimony, he stated he did much more than remove content, provide fans, and dehumidifiers for $13,500. As a result, the invoice to the insurer does not provide a credible basis for estimating the value of the work Brown provided.

Although Giddings testified that no work was completed, his testimony is undermined by his allegations in the Complaint. Giddings alleged Brown began some work and then abandoned the job. *See* Compl. ¶ 13–33. Specifically, Giddings alleged Brown demolished certain areas that needed to be renovated. *See id.* ¶ 19. He also alleged Brown moved some of the contents in his home to begin work. *See id.* ¶ 20. Finally, Giddings alleged Brown began some plumbing work but never completed it. *See id.* ¶ 21. As a result, the Court finds Brown did some work on Giddings's home despite Giddings's testimony to the contrary.

Considering the inconsistencies within both parties' evidence, the Court finds Brown completed approximately $10,000 worth of work. The Court accepts Brown's testimony that he completed the removal and drying of water damage. The Court also accepts Brown's testimony that he patched a hole in the floor because he provided a photo in which the hole was in fact repaired. The Court discredits the rest of Brown's testimony because it is not supported by photos or other extrinsic evidence. The Court also finds Brown's credibility questionable considering his misrepresentation as a Pennsylvania licensed contractor and multiple violations under the UTPCPL and HICPA.

As for Giddings, the Court accepts his testimony that Brown did not complete all the tasks he paid for. This testimony is supported by text message records in which Giddings continuously asked Brown to return and complete the tasks, but Brown failed to respond. *See* Pls.' Ex. B.

Further, because Brown did not produce an itemized invoice in which Giddings signed, it appears Giddings did not agree the work Brown completed was worth what he paid. Considering Giddings received some work by way of removing of contents and carpet and drying water damage, the Court finds that work worth nearly $10,000. Because Giddings paid Brown $14,000,[3] Brown is liable to Giddings for an additional $4,000.

In sum, Brown admitted he had $3,000 remaining after he ceased working on Giddings's house. This money must be returned. As for the remaining $14,000, the Court finds Brown completed approximately $10,000 of work. Brown must now return the remaining $4,000 to Giddings. The Court will thus award Giddings and Isaac a total of $7,000 in actual damages.

The Court will also award Osagie $9,135 in actual damages. By Brown's own admission, he accepted $9,135 from Osagie to complete the renovation job. Brown also admitted he was not a licensed Pennsylvania contractor although Osagie testified that Brown represented himself as one. In violation of HICPA, Brown admitted he did not carry liability or property damage insurance on the renovation job. *See* 73 Pa. Cons. Stat. §§ 517.4, 517.7 (requiring home improvement contracts to be completed by licensed Pennsylvania contractor and requiring liability and property damage insurance). As a result of Brown's failure to comply with HICPA, Osagie suffered the loss of $9,135. Regardless of whether the Court accepts Brown's testimony that he completed some work and there was a break in and theft of the materials he purchased, had he complied with HICPA, his insurance should have covered the loss of that work. *Cf. Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027, 1037–38 (Pa. 2016) (awarding plaintiff's actual damages

---

[3] This amount is the $17,000 Giddings paid Brown minus the $3,000 that went unused and unreturned.

when loss was attributable to defendant's misrepresentation and violation of UTPCPL). Therefore, by accepting Brown's own testimony, he is liable to Osagie in the amount of $9,135.

Next, the Court will award Plaintiffs treble damages. Under the UTPCPL, a court has discretion to award up to three times the actual damages sustained. *See* 73 Pa. Cons. Stat. § 201-9.2. The award of treble damages is not constrained by the common law requirements for punitive damages. *See Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007). Rather, treble damages are warranted to further the remedial purposes of the UTPCPL when a defendant's conduct is intentional or reckless. *See id.* Courts have considerable discretion in awarding treble damages under the UTPCPL. *See Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. Ct. 1997).

In this case, the Court finds Brown's conduct regarding the home improvement projects was reckless. First, Brown represented himself to Plaintiffs as a licensed contractor willing and able to do their requested projects in Pennsylvania, although he was not. Second, Brown failed to complete a valid contract or agreement for either of the projects as required under HICPA. Despite taking nearly $27,000 from Plaintiffs, Brown showed little to no effort in assuring the funds were allocated or invoiced properly. Third, Brown consistently ignored Giddings's text messages inquiring into the completion of the projects. *See* Pls.' Ex. B. Even if Brown completed some of his work, he failed to professionally communicate with his customers regarding their concerns. Because Brown testified he is an experienced contractor with over 45 years' experience, his conduct regarding these two projects was reckless. *Cf. E.S. Mgmt. v. Gao*, 176 A.3d 859, 868 (Pa. Super. Ct. 2017) (affirming award of treble damages where defendant acted recklessly by violating landlord and tenant law and rushing potential lessees to pay an excessive security deposit which was ultimately forfeited). As a result, the Court will award Plaintiffs' treble damages. Giddings

and Isaac's damages total $21,000 ($7,000 multiplied by three) and Osagie's damages total $27,405 ($9,135 multiplied by three).

Finally, the Court will exercise its discretion to award Plaintiffs attorney fees. Plaintiffs, however, have not submitted an accounting for the Court to determine reasonable attorney fees. *See Richards*, 152 A.3d at 1038–40 (discussing four factors to be considered in awarding attorney fees under the UTPCPL, including time and labor, customary charges, amount in controversy, and contingency or certainty of compensation). The Court will therefore grant Plaintiffs leave to file a request for costs and reasonable attorney fees pursuant to 73 Pa. Cons. Stat § 201-9.2.

**CONCLUSION**

Entry of default judgment is appropriate in this case and Brown is liable to Plaintiffs. The Court will award Giddings and Isaac $7,000 and Osagie $9,135 in actual damages. The Court will also award Plaintiffs treble damages and reasonable attorney fees in amount to be determined. Accordingly, the Court will enter default judgment against Brown for a total of $48,405—$21,000 for Giddings and Isaac and $27,405 for Osagie. The Court will grant Plaintiffs leave to file a request for costs and fees pursuant to the UTPCPL.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.